Sedgwick, Ch. J.
The complaint asks a judgment which, among other things, shall adjudge that the said syndicate agreement and the contract of sa d committee and of said American Construction Company, are incapable of performance by reason of the incapacity of said South Pennsylvania Railroad Company to carry out its said contract, and further shall adjudge this plaintiff .to be relieved of his obligations under the said syndicate agreement by reason of the violation and alteration thereof, by the said committee and the other parties thereto, and the other matters set forth in the said complaint, and which shall dissolve the said syndicate or association of subscribers and wind up its affairs.
*370 The motion is for an injunction and a receiver.
To justify the granting of the motion, it must appear that defendants will, unless restrained, commit some act during the pendency of the action which will produce injury to the plaintiff, or now threatens to do some act. in violation of the plaintiff’s rights respecting the subject of the action, and tending to render the judgment ineffectual. In a case where the plaintiff does not show that the defendants are about to do, during the pendency of the action, something which will injure the plaintiff, it is not necessary to determine whether or not there is any cause of action. In this case the plaintiff does not show that if he should hereafter obtain the judgment now asked, his interests, as he states them, will have been in the mean time changed or affected.
He paid to the committee $320,000. His complaint asserts that he is not bound to pay any further sum upon a call by the committee. If his position be correct, he cannot be compelled to pay or risk any further amount of money. His only interest, then, relates to the money he has already paid. His affidavit shows that the most of it has been disbursed by the committee, and the committee have received bonds and stocks for that, while the plaintiff believes that a part remains not disbursed.
The affidavit of membeis of the committee shows that all money paid in by the plaintiff to the committee upon calls, has been paid out by it to the construction company, and by that company to the railroad company, excepting what was paid to the existing shareholders and the existing creditors of the railroad company, and that the company have in its possession, certain shares and bonds, in which, under the syndicate agreement, the plaintiff has an interest. The proportion of these shares and bonds to which the plaintiff would be entitled on a view-favorable to him, *371 is eleven one-hundred-and-fiftieths. If he had judgment now in his favor, he could have no more of this property than the part represented by such a proportion. It is suggested that he has a money demand against the committee for acts done by them. The claim cannot be injured by any act that the defend-an ts may do during the litigation.
It is not charged that the defendants intend to convert or dispose of the property in which the plaintiff has an interest, as it has been described, excepting that it is argued from their conduct that it is their intention to make a call upon him, which it is the theory of the action cannot be competently made under the. syndicate agreement inasmuch as the plaintiff is not bound by that agreement, and, after making the call,,to attempt under the agreement to forfeit the plaintiff’s interest, in the property the committee now has. The affidavits present a suspicion that the committee may have this object,rather than proof that they have. Present facts tend to show that they do not purpose to make a call under existing circumstances. Their object seems to be to substitute voluntary contributions paid under what they call requests.” This, however, is not a subject of complaint in the present action—for if it were, it would assume that the agreement was in force. So long as no new call is made, it cannot be shown that the defendants now intend to attempt a forfeiture of plaintiff’s interest; and if it. be hereafter, the plaintiff can obtain the proper protection.
It is manifest that if the syndicate agreement be prosecuted in the future, it will not be by aid of plaintiff’s money, but by the money of other people in which he has no legal interest. It is, however, suggested that the expenditure of the money upon the construction of the railroad may give rise to some equity, as to the road itself, in favor of the persons *372 whose money was expended, that will be detrimental to the stock and bonds in the hands of the committee, to a part of which the plaintiff is entitled, or to their' value. This supposed equity is not definitely described. If it exist, it cannot be superior to that based upon the investment of plaintiff’s money in the construction of the railroad, and, upon the assumptions of the complaint, must be inferior to it. The only object in appointing a receiver would be to have the bonds and stock safe for the plaintiff, if he have a judgment that he is entitled to a part of them. There is no proof or likelihood that the bonds and stock will not remain untouched until judgment.
For these reasons the motion should be denied with $10 costs to defendants to abide event.
The plaintiff should, give security for costs in the sum of $1,500.

The subsequent agreement, made by all the subscribers except the plaintiff, provided :
“First. That notwithstanding anything to the contrary in said former agreement contained, no bond of the said railroad company shall be delivered by the committee to any subscriber, or the assignee of any subscriber hereto, until there shall have been paid by him, or in his behalf, to the syndicate committee so-called, as contemplated in said former agreement, a sum equal to fifty per cent, of the amount of the subscription to such former agreement, on. account of which such subscriber hereto may be entitled to receive bonds.....
“ Third. And each subscriber hereto does hereby authorize and empower the said committee in his behalf to sell and deliver at a price not less than tile par value thereof, the whole or any part of the bonds receivable by such subscriber under the former agreement, provided, that this stipulation shall not be binding until this agreement shall have been executed by those owning and entitled to receive bonds to the amount of ninety per cent, of the original subscription, and, provided further, that any such sale shall be made in sucli manner and amount that the subscribers hereto shall share ratably in all benefits resulting therefrom.”